And our last case this morning is United States v. Campos-Rivera. Here we go. All right. Can you all hear me? Yes, Your Honor. Okay. All right. Mr. Hillis, you may proceed. Thank you, Your Honor. May it please the Court. Mr. Fullerton, my name is Daniel Hillis. I represent Mr. Campos-Rivera on this appeal. He raises two issues, and both are sufficient, in our view, to warrant vacating his conviction independently, one ground of the other. The two particular areas that we're complaining about is that the District Court abused its discretion in denying the motion to substitute counsel, the motion for new counsel. The additional problem, in our view, is that the District Court didn't make the determination about the necessary elements for the 1326A conviction to be valid because the District Court omitted any finding about the mens rea. I'll proceed in the order that I mentioned. And to begin, Mr. Campos-Rivera made a timely request for counsel, and that does not appear to be in dispute. If I could ask a clarifying question on that point, is it really right to think about this the denial of a right to substitute counsel, because there isn't one of those. There's a right to counsel, and he had two different attorneys, and the district judge said you can't have a third, so you have to choose whether to stick with your current attorney or proceed pro se, and so isn't it better to think about this case as a challenge to the judge's approval of his decision, your client's decision to proceed pro se? Your Honor, FRERDA colloquies are, excuse me, FRERDA claims are very difficult to win, and we think that we framed it in a better fashion to proceed on the abuse of discretion claim, so I think that we could prevail, perhaps under FRERDA, but we felt more solid about prevailing, or chances of prevailing on the denial of substitution, because if a District Court abuses its discretion, and we think that we can show that it has, then my client would be entitled to go back with new counsel, and so that is the reason why we framed the issue as we have. The issue as we see it is very definitely an abuse of discretion, because again, the government doesn't contend that this is misframed, that this should not be considered under Zilgis, and in Zilgis, they considered the three factors that we've identified, the timeliness of the request, which isn't in dispute, the adequacy of the inquiry by the District Court, and there we part company with the government, but we've noted that Volp and Testa is a case where there was much more inquiry made about the basis for the request for new counsel. My client hadn't gone through a parade of attorneys. He had one attorney prior to the one that he wanted to then discharge, and that attorney wasn't doing anything for him that was getting him to trial. My client wanted a trial, his attorney stated on the record that he believed that anything he did to proceed to a trial would thwart the plea offer that the government was making. My client didn't want that, so there had been a breakdown in the representation, and the District Court did little to address that. The District Court seemed to, instead, think of this in terms of being a foolish decision, and therefore spent little time addressing what was the necessary inquiry, whether there had been a breakdown in the communications between the lawyer and the client, such that my client could have an adequate defense. If there are no questions on that, and we've cited authority to cite support, rather, for our position on that topic, I'd move down to whether or not the breakdown in communications was so great that it resulted in inadequate representation, and it did. There was no representation here. During the pretrial proceedings, my client's lawyer never tested the adequacy of the government's case, and during trial, of course, my client was forced then to proceed pro se. But it wasn't as if he wanted that, and the colloquy makes clear he chose that only because the District Court was not inclined to appoint new counsel, so he was forced then to litigate on his own behalf. You're not challenging, to go back to my threshold question to clarify the actual locus of the inquiry here, you're not challenging the voluntariness of his decision to fire his attorney and proceed pro se, and the District Court doesn't have an obligation to appoint a third lawyer. Your Honor, the District Court has an obligation to make an adequate inquiry that's satisfactory under the factors identified in Zilgis, and the District Court didn't do that, and so it is not a phoretic colloquy, we agree with that, but it is nevertheless an abuse of discretion under Zilgis. When my client wanted to have representation and he didn't get it, as for new counsel, the District Court has to discharge what its authority is by relevant benchmarks set forth in Zilgis. Mr. Hillis, that subject was discussed, as I look at the record, in a series of hearings before Judge Cannelli, right? So, I mean, at least three, and the judge seemed to have a pretty good idea and was in terms of considering his pro se motions, but ultimately said, no, you've got to go one way or the other. Do you agree we at least need to consider the entirety of all those discussions in trying to decide whether the District Judge knew enough to make this decision? The entirety of the record isn't in dispute, and the District Court was patient with my client, and the District Court did not conduct the necessary inquiry to make a valid decision at the time of the final pretrial conference, which we think is the most relevant moment in time. So, what was missing in the record, in your view? There was a fairly broad acceptance, it seems, that the District Court was of the same view, aligned his thinking with trial counsel, that this was a hopeless case, and therefore the best option would be to accept a plea offer. But my client, under McCoy, had absolutely every right to go to trial, despite any misgivings about the wisdom of an option to try his case. And so, that is a huge deficiency, in our view, and that's established in page 35 of the indictment. I thought the debate was whether certain motions would be filed, that, I mean, counsel was declining to pursue certain motions that Mr. Campos-Rivera wanted to have filed. In the appendix pages that I just referenced, pages three through five, he said something more than that. He said that he didn't regard the filings as frivolous at first, and then he seemed to track back on that a bit. But he said, more broadly, that he didn't think that it was wise to do anything that could upset the plea offer, and that is not respecting my client's right to proceed to trial. And it's as simple as that, in our view. So, as I'm down to only a few more minutes, I would like to touch briefly on the 1326A issue. And the district court never made any determination about mens rea. The government's effort to reach into the likes of Maez, we think, failed, because in Maez, there was a PSR, there were jury instructions, there was an opportunity, first, to look at what the relevant considerations were for a valid conviction through the jury instructions. That didn't happen here. And then there was also a PSR that you could look to, which we took issue with, of course, in the Maez-Matisse cases. But the evidence in that regard is lacking here. So we don't think the government can fairly rely on those cases, nor can it assert forfeiture as a valid argument here, because my client didn't have the opportunity to oppose or object to the determination. He has no responsibility, of course, to object or take exception to an erroneous ruling. And that's what happened here. So forfeiture isn't really in play, in our view. With that, I'd like to reserve the floor. I'm sorry, Judge. What do we make of the written document, filed October 24th, saying defendant, this is confusing because it says stipulated factual basis for stipulated bench trial, and then it's framed in terms of pleading guilty. But he does say defendant admits the following facts, and those facts establishes guilt beyond a reasonable doubt. What do we do with that? Well, those are problematic in our view, because if he had good representation, he wouldn't stipulate to all that was necessary for a conviction. He would have just pled. But secondly, if the stipulation was sufficient in and of itself, I don't think that we would have needed in Maez, perhaps, to look to what the PSR also said about intent. And in particular, this stipulation doesn't say about intent, Judge. So that would be our position on that. Thank you. All right. Thank you very much. Mr. Felichin. Yes. Good morning. May it please the court. Good afternoon. Taking the issues as the appellant has framed them, the district court did not abuse its discretion in declining to appoint a substitute counsel for the appellant. He had gone through one lawyer. He had another appointed lawyer. The district court was very familiar with the problem between counsel and the appellant. This issue had been brewing for some time, as Judge Hamilton noted. And when it came to a head in July, the district court conducted an ex parte hearing and asked what the problem was. And counsel explained. Counsel gave his view and the defendant gave his view. And counsel basically said he wants to file these motions. I can't say they're frivolous, but I'm weighing them against an offer. What do you say? I'm weighing what I perceive as the chances of success with an offer that we have. And I'm coming to my conclusions as to what is prudent. Mr. Campos Rivera doesn't agree with that. Counsel never said that if we file these motions, it's going to result in the disappearance of a plea offer. In fact, that didn't happen. After Mr. Loeb went on standby status and Mr. Campos Rivera went pro se, and after he filed, after the pro se motions were adjudicated in September, there was a court appearance, September 11th, in which counsel, standby counsel and the government discussed, well, the plea is still available. Does your guy want to take it? The plea was never conditioned on the filing of no pretrial motions. That wasn't the issue. And Mr. Loeb made it very clear that he said, look, I'm not asking to get out of this case. I'm an officer of this court, and I'm willing to fulfill that responsibility, end quote. In other words, there's every indication to think that Mr. Loeb would have gone to trial, was willing to go to trial. There was never a complaint from the defendant that he's trying to force me to plead guilty. No complaint that he's not meeting with me, not communicating with me, not giving me my discovery. Never any other complaint other than he won't file these motions. Now, that's just strategic difference between counsel and the defendant, and that is not grounds to appoint or to grant a motion to substitute counsel. But even if it were, this court, you know, reviews denials of these motions to substitute for whether or not there was a Sixth Amendment violation, whether the defendant ended up having constitutionally ineffective assistance of counsel. Here that review is kind of impossible because the defendant at that point fired his lawyer, chose to go pro se. There's no complaint about the district courts allowing him to go pro se. And of course, there's no indication, there's no evidence, there's really no argument that the result would have been different had Mr. Loeb remained in the case. Because as we explained in the brief, the evidence really was overwhelming that the In fact, he stipulated to the facts, which proved the offense. This decision not to allow a substitution of counsel was not an abuse of discretion. If it were, it was harmless. And the evidence overwhelmingly established the defendant's guilt. Not only in that written stipulation did the defendant agree that the facts established his guilt, but one of the factual stipulations was, of course, that he had unlawfully reentered the country. We think, and the court stated in its verdict that based upon the stipulations, he found the defendant guilty. Those stipulations and what they proved and what they allowed, reasonably allowed the  There's no claim that Mr. Fullerton, excuse me, Mr. Fullerton, what do you think is required by way of mens rea for a 1326A violation? It has to be a knowing violation. In other words, you have to know it's against the law or just know you're entering the country? You just have to know that you're reentering the United States. I don't believe there's a willfulness requirement for this charge. So the defense would have had to be that the defendant unknowingly entered the United States. He was kidnapped or he wandered over the border or he was under the influence somehow or, you know, he was unconscious. There was never any claim of that. There's no evidence to suggest that. All the evidence that was introduced at trial showed that the defendant had knowingly reentered the country. It's a very low mens rea requirement for this offense. And the evidence established that. Thank you. If there are any other questions, if there are no other questions, we'd ask that the court affirm defendant's conviction. All right, thank you very much, Mr. Hillis, you have a little time left. Thank you. So as for the right to trial, the record doesn't show the trial did anything to test the government's case. So I don't think the government can say that there is no proof here. Rather, the government is supposed to point to the proof that shows that the trial counsel did test the government's effort, excuse me, case and made some efforts. That didn't happen and shouldn't be able to flip the burden now. As for what the result have been different. Well, surely it would have, because my client was entitled to make a bad decision, decision, go to trial and play for the fumble. And of course, the government fumbled because it didn't show any mens rea. It didn't ask the district court to make a determination on that and appoints nothing in the record that shows the district court did. So without evidence of a necessary element, there cannot be a valid conviction. There's the fumble. There's the difference. There's the prejudice. And the lack of finding makes the conviction infirm, even if you were to say he doesn't have a valid request for substitution of counsel to affirm a conviction that lacks a necessary element is to support a defective conviction and to let it go by unnoticed. The government wasn't in any hurry and it could have alerted the judge. It just didn't do it. And so the district court erred. My client had no opportunity to file rule twenty nine. He was summarily sentenced and removed from the country. We think that that's adequate to to require that his conviction get vacated. Thank you. All right. Thank you very much. Thank you, Mr. Hillis, Mr. Fullerton. And the case is taken under advisement and the court is now in recess.